Roy O. **FUENTES**, Plaintiff,

v.

**NATIONAL EDUCATION
ASSOCIATION,**
Defendant.

Civ. A. No. 88–0499.

United States District Court,
District of Columbia.

Oct. 3, 1989.

Maurice Joseph, Office of Gen. Counsel, Nat. Educ. Ass'n, Washington, D.C., for defendant.

Phillip R. Kete, Gaffney, Schember & Kete, P.C., Takoma Park, Md., for plaintiff.

## MEMORANDUM OPINION

GESELL, District Judge.

This is a Title VII case. A former employee of the National Education Association ("NEA"), Fuentes, claims NEA discriminated against him solely on the basis of his national origin when NEA failed to rehire him after his job was abolished as a result of a reorganization. Fuentes is a Hispanic. He does not contest the bona fides of the reorganization which eliminated his job as a manager. After taking testimony at a bench trial and hearing oral argument, the Court reaches the following findings of fact and conclusions of law. Once again the law is clear and the facts control.

NEA is a non-profit national organization with offices and affiliates throughout the land. Its headquarters are in Washington, D.C. where Fuentes worked in various managerial capacities from 1975 until shortly after his job was abolished at the end of 1986. When he left NEA on January 2, 1987, he received substantial severance pay. After indicating his desire to be rehired and meeting no success, Fuentes filed an administrative complaint raising a variety of discrimination issues in August 1987, received a negative response on March 31, 1989, and thereafter eventually pursued only his national origin claim in this Court.

As soon as he learned of the reorganization in late September 1986, Fuentes expressed interest in obtaining another managerial job at NEA in Washington and so stated on a number of occasions to officials in the organization. At one point he intimated he might accept a lesser job if it carried an assurance of his promotion to manager. NEA had no policy or practice which gave an employee in Fuentes's circumstances either the right of re-employment or priority of consideration if and when a vacancy was available after termination; instead, this problem was handled on a case-by-case basis. In the past some individuals in similar situations were offered re-employment, some were declined re-employment, and some were transferred to employment at a different location within the national organization. During his career at NEA, Fuentes had received both successful and unsuccessful appraisals of his managerial performance in different managerial jobs, and his abilities as a manager were questioned at the time his position as a manager was eliminated. He was a lower level manager and desired to remain at headquarters.

Usually when a vacancy arises at Washington headquarters it is posted and also included in a vacancy list which is widely distributed nationally every Monday to representatives of Hispanics and other protected groups. Interested applicants are required to make written application on or before the final announced closing date specified in each vacancy announcement. Occasionally vacancies are announced which are to be filled solely from within the existing staff and are not generally available to outsiders.

In seeking re-employment, although fully aware of these procedures, Fuentes chose a personal approach. He let various individuals in NEA know of his interest in re-employment as a manager while, at the same time, he sought employment elsewhere. He sought and obtained an interview with Don Cameron, the Executive Director of NEA, requesting assistance. Cameron had no personnel responsibilities but was anxious to foster Hispanic employment and volunteered to use his best efforts for a short time to search out and find whether any vacancy suitable for Fuentes was available or in prospect. He advised senior staff to this effect but they brought no such vacancy to his attention and he told Fuentes that he had ceased his effort after a couple of weeks. Fuentes was not surprised that no job was available at that time. Cameron also agreed to have Fuentes receive the vacancy list and this was done, although the weekly list was generally sent only to employees and organizations.

There were some significant non-managerial vacancies already posted and known to Fuentes while he was still at NEA, but he did not apply for any of them so there was never any occasion to determine whether or not he was minimally qualified. These were not managerial jobs and his present claim that he was interested in them is wholly unsupported.

A managerial job was posted January 29, 1987, shortly after Fuentes had left NEA. He knew of the vacancy announcement, which had a posted closing date of February 9, 1987. Without filing a formal application addressing the announced job requirements and his experience, he wrote a letter to Cameron dated February 4, 1987, stating he was formally applying for the job and considered it a challenging opportunity. This application was received by Cameron on February 10, 1987 and reached the personnel office the same day. It was rejected by the personnel staff as late. The personnel people had no knowledge of Cameron's earlier discussion with Fuentes, but in any case, Cameron had made no promise to rehire Fuentes. NEA had, unknown to Fuentes, moved the closing day forward to February 3, 1987, and the job had already been filled but this did not affect his failure to file on time. As a matter of established practice, NEA consistently rejected late applications.

Cameron nonetheless discussed the application with the Director of Research, where the vacancy existed. The proof clearly establishes that the vacancy should never have been posted from the outset. The vacancy was for a new management position created within the research group. For budgetary and other reasons NEA planned to fill the position with an exceptionally well-qualified existing female employee of the research group, and did so before the announced closing date. Cameron was so advised and later explained the situation to Fuentes by letter.

Although he did not follow established procedures, of which he was fully aware, Fuentes contends he applied on time and was entitled to consideration. He contends his qualifications were well known and there was no need to state them. He simply says that Cameron had indicated a willingness to look out for a job opening, there was now an opening he wanted and he applied to Cameron. Fuentes knew he was not following established personnel procedures and was hoping for preference due to his origin and past work at NEA.

Fuentes was not qualified for the job in question, which required a Master's Degree or its equivalent and special mainframe computer experience at an innovative level with competence in qualitative analysis.

The required qualifications were clearly stated as follows:

> Masters degree or equivalent in the field of research and information management or related areas that have provided the incumbent with a sound foundation for research methods and techniques, quantitative analysts and data processing principles. At least six years of professional and managerial experience in the research field and information management that has afforded the incumbent the opportunity to make qualitative judgments and decisions, develop innovative methods or approaches in the field; synthesize, integrate and structure data into usable means, provide high order consulting services in the field include [sic] being recognized as an authority; and resolve novel and unanticipated problems associated with the field or research and information management. Experience with managing data in the area of educational research. *Desirable Additional Qualifications:* PhD. or equivalent. Knowledge of NEA research methods and data systems. Knowledge of NEA goals and objectives.

(PX 196; DX 22(b).)

Fuentes lacked a Master's Degree, had no mainframe experience, and his computer work had been far simpler and found not always satisfactory.

Moreover, the record clearly establishes that Cameron did not at any time indicate to Fuentes he would, in effect, have an inside track to any management job that opened up. To the contrary, he questioned Fuentes' management ability from the outset and knew Fuentes had been rated unsatisfactory in his last job.

The proof establishes that Cameron was agreeable to rehiring Fuentes because of his national origin and history of past employment if a mutually suitable position opened up. Fuentes was on cordial terms with many key people in NEA and had assisted them in efforts to recruit Hispanics.

Fuentes urges that Cameron was one of two discriminating officials but acknowledges there is no direct evidence of discrimination. While circumstantial evidence alone can prove a case, the direct evidence fully establishes that Cameron had no intent to discriminate because Fuentes is Hispanic and did not discriminate. Indeed, the proof as a whole does not in any respect support the suggestion that Fuentes' national origin had anything whatsoever to do with NEA's fumbling effort to correct the faulty posting which occurred before Fuentes even had attempted to apply. In any event, Fuentes was late and failed to apply within the first announced date so the change had no effect on him.

NEA has a positive record of non-discrimination. This is the only Hispanic case ever filed against it. As the testimony and numerous exhibits make clear, and consistently in recent years especially NEA has made an extra effort to assist and advance Hispanics. Throughout his dealings following the reorganization Fuentes conducted himself in a gentlemanly manner and found consideration from his former colleagues who attempted in various ways to assist him. He was given a contract of consultation in addition to his severance pay. There is no evidence of any antagonism toward him in the record, whether it be because of his national origin or otherwise.

Thus, on the proof as a whole [1] Fuentes has not met his burden. The only job he attempted to apply for was a new managerial position that was intended from the outset to be filled by existing employees. Fuentes failed to make proper application on time or in a form reflecting his qualifications for the position. He was not qualified. No intent to discriminate is demonstrated by direct or circumstantial proof.

1. Fuentes established a prima facie case in his testimony under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), although on key issues it was not consistent with exhibits he offered and interpreted. His Hispanic origin is unquestioned. He claimed to have been qualified for three jobs, to have applied appropriately and to have been promised consideration. The full proof refuted these contentions.

Fuentes never reached the point to be selected and was never promised selection or preferred consideration. The reasons given at the highest and lower levels of NEA for not considering Fuentes were clear and not pretextual. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254–56, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981).

The Clerk of Court shall enter judgment for defendant NEA, with costs to be fixed by the Clerk.

SO ORDERED.